## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SAHIB QUIETMAN HENDERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )    **Case No. CIV-07-1174-W** |
| | ) |
| JUSTIN JONES, et al., | ) |
| | ) |
| Defendants. | ) |

## SIXTH REPORT AND RECOMMENDATION

**Defendants' Motion for Summary Judgment**

Now at issue is the motion of the remaining Defendants, Justin Jones, Edward Evans, and Ron Ward – each a current or former director or associate director of the Oklahoma Department of Corrections ("DOC") – for summary judgment [Doc. No. 106]. An explanation and resolution of other pending motions is necessary before the merits of the summary judgment motion are addressed.

### Other Pending Motions

On February 6, 2009, several weeks after the undersigned entered an order establishing a March 2, 2009, dispositive motion deadline [Doc. No. 94], Plaintiff filed a motion to compel certain discovery from Defendants [Doc. No. 101]. While termed a motion to compel, it was apparent from the motion that Plaintiff had served no discovery requests prior to filing the motion. *Id.* at 2. The undersigned denied Plaintiff's motion due to noncompliance with discovery rules and, in addition, specifically advised Plaintiff that Fed.

R. Civ. P. 37(a)(1) required his certification that he had made a good faith effort to resolve any dispute between the parties prior to seeking court action [Doc. No. 104, p. 2]. Also before the expiration of the dispositive motion deadline, Plaintiff filed a motion for judgment on the pleadings [Doc. No. 105], a motion which will be separately addressed below.

Following the expiration of the dispositive motion deadline, Plaintiff filed a "Notice of Mailing Plaintiff's Request for Discovery" along with an objection [Doc. No. 108] to Defendants' summary judgment motion. He then sought and received two extensions of time within which to further object to Defendants' motion [Doc. Nos. 111, 112, 113, and 114]. In addition, Plaintiff filed a motion to amend his complaint [Doc. No. 110]. As to that request to amend, in making the following recommendation on the merits of Defendants' summary judgment motion, the undersigned has considered Plaintiff's complaint to be amended as requested by his motion, and, consequently, the motion to amend [Doc. No. 110] is deemed granted.

Plaintiff ultimately filed his additional objections to the summary judgment motion but once again sought to compel discovery from Defendants, claiming that their "motion for summary judgment should be strickened for attempting to obtain judgment, when, failing to participate in discovery." [Doc. No. 115, p. 2].[1] The undersigned recommends that Plaintiff's motion to compel/motion to strike be denied for the following reasons. First, after

---

[1]Throughout this Report and Recommendation, the parties' spelling and punctuation have been reproduced as submitted in their filings unless otherwise reflected. Likewise, quotations from exhibits have not been edited but are reproduced as written unless otherwise indicated.

the undersigned denied [Doc. No. 104] Plaintiff's initial motion to compel [Doc. No. 101], he failed to submit his discovery requests to Defendants prior to the expiration of the dispositive motion deadline.   Thus, there is no support for Plaintiff's assertion that Defendants failed to participate in the discovery process prior to the dispositive motion deadline.   Second, although the undersigned had previously instructed Plaintiff [Doc. 104, p. 2] that a motion to compel "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action," Fed. R. Civ. P. 37(a)(1), Plaintiff's motion does not reflect any effort on his part to confer with Defendants' counsel on this issue but states, instead, that he "made a 'good faith' effort to serve Defendant's; when, on March 5, 2009,[2] the Plaintiff sent by certified mail, 'Plaintiff's first set of requests for admissions/production/interrogatories . . . ." [Doc. No. 115, p. 2].   Although Plaintiff appears pro se and is entitled to a liberal interpretation of his pleadings, he must follow the same procedural rules that govern other litigants.   *Kay v. Bemis,* 500 F.3d 1214, 1218 (10th Cir. 2007).   Plaintiff failed to follow the requisite procedural rules, and his motion to compel [Doc. No. 115, p. 2] should be denied.

Several days after filing his objections and motion to compel, Plaintiff sought additional time within which to submit more evidence in support both of his motion for judgment on the pleadings and of his objections to Defendants' summary judgment motion

---

[2]This was three days after the dispositive motion deadline [Doc. No. 94].

[Doc. No. 116].  Before an order was entered in response to this request, Plaintiff filed a

motion to amend which contained additional evidence [Doc. No. 117]. As the undersigned

has considered the evidence submitted by Plaintiff and his motion to amend [Doc. No. 117],

it is deemed granted.[3]

Plaintiff has also filed what he terms to be a "Motion for Declaratory Judgment"

which is a recapitulation of Plaintiff's claims, arguments, and requests to strike various

portions of Defendants' summary judgment motion [Doc. No. 120].  The undersigned has

considered the evidence and arguments raised by Plaintiff in this motion in making the

recommendation to follow.  Nonetheless, because the undersigned finds in that

recommendation that Plaintiff is not entitled to any relief – declaratory or otherwise – under

his complaint and that Defendants' motion for summary judgment should be granted,

Plaintiff's motion for declaratory judgment [Doc. No. 120] should be denied.[4]

Six final motions filed by Plaintiff should also be denied.  In one, a Motion for Order

Affecting Service [Doc. No. 121], Plaintiff requests that service of his declaratory judgment

motion be made by the U.S. Marshal upon Defendants, complaining that he had not received

a return receipt from Defendants.  In a subsequent filing, however, Plaintiff states that he has

---

[3]The undersigned did not grant Plaintiff's request [Doc. No. 118] that a copy of his amended objection – presumably Doc. No. 117 – be "forwarded to the Defendants," [Doc. No. 118] – presumably by the Court Clerk – and it is deemed denied.

[4]Plaintiff has also included a motion for placement on the next trial docket and a motion for appointment of counsel within his declaratory judgment motion [Doc. No. 120].  Not only does Plaintiff fail to make any argument in support of those motions within the body of his brief, but, in light of the undersigned's ultimate recommendation, these motions should likewise be denied.

received the receipt and is filing it of record [Doc. No. 122].  Accordingly, Plaintiff's motion

[Doc. No. 121] should be denied as moot. Plaintiff's motion for "ruling on the pleadings"

which is included in that latter filing [Doc. No. 122] is unsupported and should be denied.

Plaintiff's motion requesting that he be advised of the current status of this matter [Doc. No.

123], motion for appointment of counsel [Doc. No. 125], and motion for an extension of time

[Doc. No. 126] should be denied as moot in light of this Report and Recommendation and,

finally, Plaintiff's request – docketed as a motion [Doc. No. 124] – directed to the court clerk

and requesting summonses for these three Defendants, should likewise be denied as both

procedurally redundant and moot.

**Analysis**

**The Complaint**

Plaintiff maintains that while Defendants were serving as directors of the DOC, they

implemented policy with regard to inmates' access to courts which violated his constitutional

rights [Doc. No. 1, pp. 1 - 2 and 4; Exhibits A, B, and C].  Specifically, Plaintiff – who was

housed in the Davis Correctional Facility, a private prison, at all times pertinent to his

complaint –  contends that his due process and equal protection rights under the First and

Fourteenth Amendments were violated and that Defendants "by custom and usage are

deliberately indifferent and negligent[5] as to these constitutional rights of inmates housed in

_____

[5]By subsequent amendment, Plaintiff added the allegation that Defendants acted "willfully and wantonly." [Doc. Nos. 9 and 16].  In addition, Plaintiff amended his complaint to allege that the policy implemented by the Defendants "allowed Davis Correctional Facility' staff, to be negligent
(continued...)

private prisons; in that, policy implimented by Defendants . . . do not require private prisons to provide resources rising to the standard of "constitutionally adequate access to the courts; where, the policy implimented by each Defendant simply states: 'inmate at private prison must use the resources provided by the facility.'" *Id.* at 4.  Plaintiff alleges that his private prison facility does not have the law library, law clerks, or legal resource centers that are available by policy to prisoners in state-run prisons but, instead, provides the services of an inadequate "contract attorney, as being inmates means of 'access to the courts[.]'" *Id.* at 4 - 5.  As a result of these alleged constitutional violations, Plaintiff claims that he was prevented from refiling a civil suit and has been denied a full and fair hearing in his attempt to appeal his criminal conviction.  *Id.* at 4.  Plaintiff further maintains that he incurred numerous procedural defaults, was placed on a registry of prisoners who have maintained frivolous lawsuits, and was unable to present non-frivolous claims, to use proper legal theory to identify or recognize errors, "to functionally litigate, in response to briefs and or rulings," to "enforce mandamus(s) and court orders," and, "to procedurally obtain pre-trial motions and jury instructions."  *Id.* at 5.  Damages and injunctive relief are sought.  *Id.* at 18 - 19.

## **Standard of Review**

Summary judgment may be granted only where the pleadings and any supporting documentary materials "show that there is no genuine issue as to any material fact and that

---

[5](...continued)
or to act with deliberate indifference to Plaintiff's right to 'access to the courts,' 'due process and equal protection of the law'; resulting in, the Plaintiff being denied these rights[.]" [Doc. No. 110, p. 2].

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering

a motion for summary judgment, the court must view the facts and inferences drawn from

the record in the light most favorable to the nonmoving party. *Burke v. Utah Transit Auth.*

*& Local 382,* 462 F.3d 1253, 1258 (10th Cir. 2006) (quotation omitted). And, while a pro se

plaintiff's complaint is liberally construed, a pro se plaintiff must adhere to the same rules

of procedure which are binding on all litigants. *Kay,* 500 F.3d at 1218. Thus, strict

adherence by a pro se plaintiff to the requirements of Fed. R. Civ. P. 56 is required. With

respect to those requirements, the Supreme Court has determined that

> the plain language of Rule 56(c) mandates the entry of summary judgment,
> after adequate time for discovery and upon motion, against a party who fails
> to make a showing sufficient to establish the existence of an element essential
> to that party's case, and on which that party will bear the burden of proof at
> trial. In such a situation, there can be "no genuine issue as to any material
> fact," since a complete failure of proof concerning an essential element of the
> nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### **Official Capacity Claims - Eleventh Amendment Immunity**

Plaintiff was permitted to amend his complaint to name each of the Defendants in his

official and individual capacities [Doc. Nos. 44 and 55]. Nonetheless, Plaintiff also alleges

that Defendants Jones, Evans, and Ward are employees of the Oklahoma Department of

Corrections [Doc. No. 1, pp. 1 - 2]. As a general rule, the Eleventh Amendment immunizes

states from suit in federal court. *See Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995)

("the Eleventh Amendment bars a suit brought in federal court by the citizens of a state

against the state or its agencies"). Claims for damages against a state employee in his official

capacity are construed as claims against the state and are thus likewise barred by the Eleventh Amendment.  *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (a suit against an individual acting in an official capacity is properly treated as a suit against the state itself and is barred under the Eleventh Amendment); *White v. Colorado*, 82 F.3d 364, 366 (10th Cir. 1996) (Eleventh Amendment sovereign immunity barred §1983 claims against prison officials in their official capacities).

An exception to this bar exists where Eleventh Amendment immunity has been waived by the state or abrogated by Congress.  *See Ramirez v. Oklahoma Department of Mental Health,* 41 F.3d 584, 588 (10th Cir. 1994).  The State of Oklahoma has not waived its Eleventh Amendment immunity.  *Id.* at 589.  Nor has Congress abrogated the Eleventh Amendment immunity of the states through the enactment of § 1983.  See *Quern v. Jordan*, 440 U.S. 332, 345 (1979).  Therefore, the Eleventh Amendment forecloses all claims for monetary damages against Defendants Jones, Evans, and Ward in their official capacities.

 Official capacity claims for prospective equitable relief are not ordinarily subject to the Eleventh Amendment.  *See Ex parte Young*, 209 U.S. 123, 159-60 (1908); *Ellis v. University of Kansas Medical Center*, 163 F.3d 1186, 1196 (10th Cir. 1998).  Here, Plaintiff requests "an order directing Davis Correctional Facility to comply with standard set by the 'state institutions' as required by the First and Fourteenth Amendment." [Doc. No. 1, p. 19]. This portion of Plaintiff's action against Defendants in their official capacity is not barred by the Eleventh Amendment.  Nonetheless, "Plaintiff was transferred from Davis Correctional Facility to Dick Conner's Correctional Center on or about 17 July 2007," [Doc. No. 1, p. 7],

where he remains as of the date of his most recent filing on August 19, 2009 [Doc. No. 126].

Accordingly, because Plaintiff is no longer subject to the alleged lack of access to the courts

at the Davis Correctional Facility, his claim for injunctive relief with respect to that facility

is moot. *See Green v. Branson,* 108 F.3d 1296, 1299-1300 (10th Cir. 1997) (claims for

injunctive and declaratory relief are moot where the prisoner has been released or transferred

and is no longer subject to the conditions of confinement on which his claims are based).

Therefore, all claims against Defendants Jones, Evans, and Ward in their official capacities

are foreclosed by the Eleventh Amendment.   Accordingly, and in the absence of subject-

matter jurisdiction, it is recommended that Plaintiff's official capacity claims against these

Defendants be dismissed without prejudice. *See Shikles v. Sprint/United Management Co.,*

426 F.3d 1304, 1317-18 (10th Cir. 2005); *Polaski v. Colorado Dept. of Transportation,* 198

Fed. Appx. 684, 685-86 (10th Cir. Aug. 2, 2006).

### Individual Capacity Claims[6]

---

[6]Defendants' initial proposition in their summary judgment motion is that Plaintiff failed to exhaust his administrative remedies [Doc. No. 106, p. 4].   Nonetheless, Defendants have failed to include any affidavit in support of their affirmative defense establishing, among other matters, that the DOC grievance policy upon which they rely was fully applicable during Plaintiff's incarceration at the Davis Correction Facility.  Plaintiff has offered evidence to the contrary, establishing through a copy of the Inmate Handbook for the Corrections Corporation of America's ("CCA") Davis Correctional Facility that a combination of CCA and DOC policy applied [Doc. No. 117, Exhibit A-S, p. 3].  Moreover, Defendants simply recite in argument with no affidavit support that Plaintiff failed to appeal various grievances [Doc. No. 106, p. 6].   Further, Defendants have not offered proof regarding Plaintiff's efforts, if any, to put *these three Defendants* on notice of his complaints concerning DOC policy – the subject of his complaint.  Accordingly, the undersigned has not addressed Defendants' unsupported affirmative defense regarding exhaustion.

Likewise, the undersigned has not considered the merits of Defendants' statute of limitations defense which is grounded solely on the erroneous assertion that Oklahoma's statute of limitations

(continued...)

Defendants maintain they are entitled to summary judgment because they did not personally participate in any constitutional violation with regard to Plaintiff [Doc. No. 106, pp. 9 - 11]. Unquestionably, "[p]ersonal participation is an essential allegation in a § 1983 claim." *Mitchell v. Maynard,* 80 F.3d 1433, 1441 (10th Cir. 1996) (citations and quotation marks omitted). Plaintiff maintains that Defendants personally participated in a constitutional violation by implementing the following provision in the DOC procedure pertaining to Access to Courts/Law Library: an "[i]nmate at a private prison must use the resources provided by the private facility." OP-030115(I)(B)(1). [Doc. No. 1, Exhibits A, B, and C]. According to Plaintiff's original complaint, the constitutional violation occurred

> [w]here, Defendants 1) Justin Jones, 2) Edward Evans and 3) Ron Ward as Directors of the Department of Corrections by custom and usage are deliberately indifferent and negligent as to these constitutional rights of inmates housed in private prisons; in that, policy implemented by Defendants 1, 2, and 3, do not require private prisons to provide resources rising to the standard of "constitutionally adequate access to the courts; where, the policy implemented by each Defendant simply states: 'inmate at private prison must use the resources provided by the facility.'

[Doc. No. 1, p. 4]. Through an amendment to his complaint, Plaintiff additionally alleges that "[t]he Defendant's implemented policy 'OP-030115'; which, allowed Davis Correctional Facility Staff, to be negligent or to act with deliberate indifference to Plaintiff's right to 'access to the courts,' 'due process and equal protection of the law'; resulting in, the Plaintiff being denied these rights . . . ." [Doc. No. 110, p. 2]. Thus, Plaintiff complains that

---

[6](...continued)
for a personal injury action is one year [Doc. No. 106, pp. 7 - 8]. *See* Okla. Stat. tit. 12, § 95(A)(3).

Defendants, through their implementation of the DOC policy in question, violated his constitutional right to access the courts and, in addition, allowed the officials at the Davis Correctional facility to violate that right.

In *Bounds v. Smith*, 430 U.S. 817, 828 (1977), the Supreme Court found "that the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law. *Id.* at 828. Nonetheless, *Bounds* does not "create an abstract, free-standing right to a law library or legal assistance. . . ." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). States may "choose among a variety of methods or combinations thereof in meeting their constitutional obligations." *Ramos v. Lamm*, 639 F.2d 559, 583 (10th Cir. 1980). A state can choose to provide legal assistance to inmates in lieu of maintaining an adequate legal library. *Petrick v. Maynard*, 11 F.3d 991, 995 (10th Cir. 1993). "[I]t has been noted that '[t]he choice among various methods of guaranteeing access to the courts lies with prison administrators, not inmates or the courts.'" *Peoples v. CCA Detention Centers*, 422 F.3d 1090, 1107 (10th Cir. 2005) (citation omitted). All the right of access to the courts guarantees an inmate is the right to some manner of assistance so as to present a "non-frivolous" claim to a court. *Lewis*, 518 U.S. at 351("In other words, prison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.") (quoting *Bounds*, 430 U.S. at 825).

11

As noted, DOC policy implemented by these Defendants pertaining to access to courts provides that an "[i]nmate at a private prison must use the resources provided by the private facility."  OP-030115(I)(B)(1) [Doc. No. 1, Exhibits A, B, and C].  This same policy further provides that "[p]rivate prisons will provide access to courts in accordance with their contract with DOC."  OP-030115(VIII). *See* http://www.doc.state.ok.us/Offtech/op030115.pdf. The undisputed evidence submitted by Plaintiff in the form of the Inmate Handbook for Corrections Corporation of America's Davis Correctional Facility explains how that mandate by the DOC was effectuated at Plaintiff's facility:

### Legal Services

The U.S. Supreme Court in <u>Bounds v. Smith</u> allows a prison to meet the access to court requirements by the use of a law library, a person trained in the law, or a combination of both.  CCA has chosen to use a person trained in the law. Access to courts is provided to assist inmates in filing initial pleadings in court.  There is no requirement to provide defense or prosecution beyond the initial pleading stage.

### Functions of the Access to Courts

Access to court's rights of inmates at DCF as required by the constitution and laws of the United States are provided by making available the attorney's Don G. Pope and Associates.  Attorney services are limited to issues related to their criminal conviction or conditions of confinement as specified by the US Supreme Court in Lewis v. Casey.  The attorneys do not enter an appearance in court or activity represent inmates: rather they assist inmates in preparing documents for their own pro se representation.  Services include provision of case law, statues or other legal materials and forms as requested.  If an inmate does not know the case he needs the attorney will visit with him to determine what it is he is looking for and research the issue identified.  The attorney will also assist in drafting of pleading as needed.  If an inmate has a question or issue the attorney will conduct interviews to assist in answering his questions as needed and, if necessary, direct him in further steps he needs to take to resolve his issue.  The attorney will assist the inmates in any civil litigation

related to conditions of confinement but will not assist with private civil matters such as divorce, probate etc.

To obtain assistance from the attorney, you must first complete Form 14-8A, Request for Attorney Conference.  The form will be mailed free of charge to the attorney.  The attorney will determine if your concern can be handled without talking to you.  If so, the attorney will provide you with a written response so that you will know what has been done on your behalf.  If he or she needs to talk with you for more details, a conference will be arranged.

[Doc. No. 117, Exhibit A-S, p. 2].

Contrary to Plaintiff's contentions, the policy implemented by Defendants specifically provides that private prisons will provide access to courts pursuant to their agreement with the DOC.  The method chosen by Plaintiff's private prison to effectuate that agreement – "adequate assistance from persons trained in the law," *Bounds,* 430 U.S. at 828 – has been approved by the Supreme Court as constitutionally equivalent to the law library method used at state-run facilities – the method Plaintiff would have preferred.  *Id.*  Thus, implementation of this policy – the *only* way in which *these Defendants* personally participated in the events of which Plaintiff complains – secured rather than hindered Plaintiff's right of access to the courts.  Consequently, these Defendants did not personally participate in any constitutional violation.  If Plaintiff's right of access to the courts was violated, it was violated not by these Defendants but by individuals at Davis Correctional Facility who have not been sued here.  And, Defendants cannot be held liable in a Section 1983 action under a theory of *respondeat superior.  See Worrell v. Henry,* 219 F.3d 1197, 1214 (10th Cir. 2000) ("Instead, to establish supervisory liability, a plaintiff must show that 'an affirmative link exists between the [constitutional] deprivation and either the supervisor's

personal participation, his exercise of control or direction, or his failure to supervise.'") (quoting *Meade v. Grubbs,* 841 F.2d 1512, 1527 (10th Cir. 1998)).  Plaintiff has not demonstrated the requisite personal involvement of any Defendant in the alleged access to courts violation, and Defendants are entitled to summary judgment.  *See also Florez v. Johnson,* 63 Fed. Appx. 432, 436 (10th Cir. Mar. 28, 2003) (unpublished op.) (the lack of personal participation alone warranted the dismissal of a claim of denial of access to the courts)).

Alternatively, Defendants maintain they are entitled to qualified immunity because no clearly established constitutional right has been violated by these Defendants  [Doc. No. 106, pp. 11 - 13].  "This defense shields government officials performing discretionary functions from liability 'if their conduct does not violate clearly established rights of which a reasonable government official would have known.'" *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006).  Once a qualified immunity defense has been asserted, it is Plaintiff's obligation to shoulder "the burden of showing both that a constitutional violation occurred and that the constitutional right was clearly established at the time of the alleged violation." *Williams v. Berney,* 519 F.3d 1216, 1220 (10th Cir. 2008).

Plaintiff has failed to make either showing.  First, as previously discussed, these Defendants did not commit any constitutional violation.  While Plaintiff undoubtedly enjoys the constitutional guarantee of the right to access the courts,[7] the policy implemented during

---

[7]*See Murray v. Giarratano,* 492 U.S. 1, 11 n. 6 (1989) ("The prisoner's right of access has been described as a consequence of the right to due process of law and as an aspect of (continued...)

14

each Defendant's tenure as director of the DOC directed that private prisons provide that access.  Second, although Plaintiff maintains he had the constitutional right to the same *method* of accessing the courts as did inmates at state-run facilities – a law library –  he has failed to direct the court to any authority clearly establishing such a right.  To the contrary, the Constitution "does not require states to give inmates unlimited access to a law library, and inmates do not have the right to select the method by which access will be provided." *Penrod v. Zavaras,* 94 F.3d 1399, 1403 (10th Cir. 1996) (internal citations omitted)). Defendants are, once again, entitled to summary judgment.

Defendants also alternatively maintain that "an inmate who alleges a violation of his right of access to the courts must show actual injury." [Doc. No. 106, p. 8].  Absent a showing of an actual injury, Plaintiff lacks standing to pursue his claim of denial of access to courts.  *See Lewis,* 518 U.S. at 349.  An inmate cannot establish a violation of his right of access to the courts merely by demonstrating that a prison's law library or legal assistance program is inadequate in some respect.  *Id.* at 351.  Instead, the inmate "must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program  hindered his efforts to pursue a legal claim."  *Id.  See also Penrod,* 94 F.3d at 1403 ("[A]n inmate must satisfy the standing requirement of 'actual injury' by showing that the denial of legal resources hindered the prisoner's efforts to pursue a nonfrivolous claim.") (citing *Lewis,* 518 U.S. at 351)).

---

[7](...continued)
equal protection.") (internal citations omitted)).

Moreover, "the injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis,* 518 at 354. Rather, the injury must involve attempts by inmates "to attack their sentences, directly or collaterally" and "to challenge the conditions of their confinement." *Id.* at 355. *See also Carper v. Deland,* 54 F.3d 613, 617 (10th Cir. 1995) ("[A]n inmate's right of access does not require the state to supply legal assistance beyond the preparation of initial pleadings in a civil rights action regarding current confinement or a petition for a writ of habeas corpus."). Nor does an inmate's inability to effectively litigate once in court fulfill the requirement of actual injury. *Lewis,* 518 U.S. at 354.

As to actual injury, Plaintiff states in his complaint that the inadequacies in the Davis Correctional Facility's legal assistance program – through attorney Don Pope and his associates – resulted in the denial of a full and fair hearing in the appeal of his conviction, in numerous procedural defaults, in his placement on a registry of prisoners who have maintained frivolous lawsuits, and in his inability to refile a civil suit, to present non-frivolous claims, to use proper legal theory to identify or recognize errors, "to functionally litigate, in response to briefs and or rulings," to "enforce mandamus(s) and court orders," and, "to procedurally obtain pre-trial motions and jury instructions." [Doc. No. 1, p. 4 - 5]. Plaintiff's complaint also includes a list of court papers he "was hindered in properly and needlessly filing." *Id.* at 15. As to how the inadequacies in the Davis Correctional Facility's legal assistance program hindered his ability to access the courts, Plaintiff alleges that "Don

Pope does not research cases[8] . . . would not aid in Plaintiff's civil complaint, contending his service is limited to present criminal conviction and conditions of confinement . . . more times than not returned inapplicable case-law . . . [and] at times it took months to receive a response to 'requests for legal materials . . . [and] at times the requests weren't answered at all. (See Exhibits, D - J)." *Id.* at 5. A review of the exhibits cited by Plaintiff reveals that they consist of requests to staff and grievances generally reflecting Plaintiff's dissatisfaction with Don Pope and requesting a transfer to a facility with a law library as well as correspondence involving Mr. Pope's response to an inquiry from Plaintiff's facility. The exhibits do not, however, establish Mr. Pope's refusal to assist Plaintiff in a legal effort. And, as the Davis Correction Facility warden advised Plaintiff, "[y]ou have indicated that [Mr. Pope] has not assisted with over twenty filings but you have not indicated how this prevented you from filing or resulted in the denial of a nonfrivolous claim as required by the court." [Doc. No. 1, Exhibit J].

In subsequent filings, Plaintiff complains that the Davis Correctional Facility did not provide a source such as inmate legal assistants "who after the Plaintiff consulted with legal

---

[8]In a subsequently filed affidavit, Plaintiff expanded on this allegation by stating that "[t]he Plaintiff recounts occassion where, when asking Don Pope a question on an issue . . . the Plaintiff attempted to show Don Pope an issue in court transcripts . . . Don Pope closed trial transcripts and declare, I am here just for consultation and for him to look at trial transcripts would require a retainer of $1,800.00 (Eighteen-hundred dollars" [Doc. No. 98, p. 3]. This purported statement by Mr. Pope is inadmissible hearsay. *See Argo v. Blue Cross and Blue Shield of Kansas, Inc.,* 452 F.3d 1193, 1199 (10th Cir. 2006)("[At summary judgment, courts should disregard inadmissible hearsay statements *contained* in affidavits, as those statements could not be presented at trial in any form.") (emphasis in original)).

learning source (access attorney, (Don Pope) would have been able to translate complaints into understandable presentation . . . ." [Doc. No. 105, p.3].  Plaintiff alleges that the absence of such a source prevented him from "properly appealing his state court conviction" because "of the inability to . . . follow legal procedure . . . recognize claims . . . [and] know what legal materials to request from the `access attorney." *Id.*  He further asserts that Mr. Pope "did not assist the Plaintiff in filing any court action . . . ."  *Id.*  Plaintiff, however, does not demonstrate in this filing how "the alleged shortcomings in the . . . legal assistance program hindered his efforts to pursue a legal claim."  *Lewis,* 518 U.S. at 351.  Plaintiff does submit what he maintains is "direct evidence" of "Don Pope's refusal to assist the Plaintiff refile civil complaint" which consists of a copy of a form where Mr. Pope states that his assistance only extends to post conviction and habeas actions and to condition of confinement issues. [Doc. No. 105, p. 6].[9]

In his objections to the summary judgment motion, Plaintiff devotes eighteen (18) pages to what he terms "actual injury," [Doc. No. 115, p. 9], and in which he recounts various issues arising from his criminal conviction and his resulting appeal and collateral attacks.  *Id.* at 9 - 26.  His theory is that he would have prevailed in those legal efforts but for his "inability to effectively proceed in the appellate process," *id.* at 9, due to his lack of

---

[9]Plaintiff also suggests that "[h]ad the Plaintiff been confined at a state correctional facility he would have had access to a law library, a legal research computer and inmate legal assistants to refile civil complaint, Civ-01-989-W." [Doc. No. 105, pp. 6-7].

sufficient legal knowledge and resources to recognize arguments that should have been raised but were not.[10]

The undersigned's review of Plaintiff's actual injury contentions[11] reveals the following. First, Plaintiff alleges that the criminal trial judge improperly dated Plaintiff's modified judgment and sentence, fraudulently noted that Plaintiff and his counsel were present at the proceeding, and fraudulently stated that he had advised Plaintiff of his appeal rights. *Id.* at 9 - 11. Plaintiff maintains that he was unaware of this until he filed a petition for a writ of mandamus that resulted in his obtaining a copy of the modified judgment and sentence in March, 2004. *Id.* at 10 - 11. He contends that this caused him prejudice because he had already filed his first two post-conviction relief requests and his petition for habeas corpus. *Id.* Plaintiff fails to demonstrate, however, how the legal assistance program at the Davis Correction Facility – the same legal assistance program that was in place when he

---

[10]Defendants have not moved for summary judgment based upon the application of *Heck v. Humphrey,* 512 U.S. 477, 487 (1994). *See Nance v. Vieregge,* 147 F.3d 589, 591 (7th Cir. 1998)(holding that "[i]f the injury in question is losing the underlying case, then *Heck v. Humphrey* . . . comes into play [and] holds that a damages remedy that necessarily implies the invalidity of a criminal conviction is impermissible while that conviction stands[]"). Accordingly, the undersigned has not addressed the applicability of the *Heck* decision to Plaintiff's claims.

[11]While this review focuses on the *factual* inaccuracy and inadequacy of Plaintiff's actual injury arguments, the undersigned further notes that Plaintiff has failed to demonstrate that the claims underlying his access to courts claims are nonfrivolous. Supreme Court cases recognizing a constitutional  right to access the courts "rest on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury,* 536 U.S. 404, 415 (2002). Thus, "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Id.* The Court has emphasized "the need for care in requiring that the predicate claim be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Id.* at 416.

obtained a copy of the modified judgment and sentence – hindered his efforts to obtain a copy of the document any earlier than he did.

Plaintiff's next claim is grounded on his erroneous assertion that the Oklahoma Court of Criminal Appeals found that his convictions ran afoul of the double jeopardy prohibition. *Id.* at 12 - 14. To the contrary, the court determined that a statutory provision against double punishment had been violated, [Doc. No. 117, Exhibit B-S, p. 3], and specifically determined that "[t]he convictions do not violate the prohibition against double jeopardy because each crime requires proof of an element that the other does not." *Id.* at p. 2, n.1.

As to Plaintiff's next arguments regarding the criminal trial judge's abuse of discretion, [Doc. No. 115, pp. 15 - 19], Plaintiff has simply recited alleged facts, which were not subject to legal discovery but were known to him, along with additional arguments which he could have included in his direct appeal or in his collateral attacks on his conviction. Although he makes vague and conclusory arguments about the lack of adequate legal resources, *id.* at 15, Plaintiff provides no showing – or even an explanation – as to how the legal assistance program at Davis Correctional Facility hindered his ability to include these arguments in his assertions of judicial abuse of discretion. *See* Case No. CIV-03-1320-M, United States District Court for the Western District of Oklahoma, Report and Recommendation, Doc. No. 31, p. 3.

Plaintiff's next claims of actual injury [Doc. No. 115, pp. 19 - 25] involve the relationship between a juror and a potential defense witness, Ms. Burton, and the alleged intimidation of Mr. Graham, a defense witness, as well as the arrests of both Ms. Burton and

Mr. Graham. These issues were each raised by Plaintiff in various post-conviction attacks which were filed during the time period in which Plaintiff was reliant on the legal assistance program at Davis Correctional Facility. *See* Case No. CIV-03-1320-M, United States District Court for the Western District of Oklahoma, Doc. No. 15, Exhibit E, sequential pp. 4 - 5 and 25 - 30. *See also id.* at Doc. No. 31, pp. 18 - 26 and 29 - 32. Plaintiff has not established that he was hindered from asserting these claims by any inadequacy in the Davis Correctional Facility legal assistance program.

Next, and again contrary to his argument that "the lack of legal assistance prevent the Plaintiff from understanding how to argue an inaccurate record of the proceedings," [Doc. No. 115, p. 24], Plaintiff own brief establishes that he raised an argument regarding the revocation of his bond in his petition for writ of habeas corpus. *Id.* at 24 - 25. As to Plaintiff's argument alleging that the court reporter was not present while a record was being made of peremptory challenges, Plaintiff, who does not deny being in possession of the trial transcript, does not explain how inadequacies in the Davis Correction Facility's legal assistance program hindered him from noting this fact in his post conviction proceedings in the same manner he has noted it here.

Finally, Plaintiff maintains that as a result of inadequate legal assistance while pursuing post-conviction relief, he did not "realize that he had been denied a 'full and fair' direct appeal; where, appellate counsel, Michael McBride did not raise these issues; in that, he was original trial counsel, whom, waived 'preliminary hearing' and withdrew from the trial court proceedings; to do so would have resulted in Michael McBride complaining of

21

'ineffective assistance' upon himself[.]'" *Id.* at 25.  A previous filing by Plaintiff, however, which raised  ineffective assistance of counsel in connection with his habeas corpus petition, reflects his awareness of the preliminary hearing waiver and of the matters raised by Mr. McBride on direct appeal "[i]nstead of filing Ineffective Assistance upon himself."  *See* Case No. CIV-03-1320-M, United States District Court for the Western District of Oklahoma, Doc. No. 20, sequential p. 2.

Plaintiff has not established actual injury.  As to his inability to refile a civil claim, "the actual injury requirement is not satisfied by just any type of frustrated legal claim."  *Lewis,* 518 U.S. at 354.  *See Carper,* 54 F.3d at 616-17 ("[A] state has no affirmative constitutional obligation to assist inmates in general civil matters.").  While Plaintiff speculates that his lack of access to a law library and inmate legal assistants resulted in his ability to properly litigate his direct appeal, his petition for habeas corpus, and his post-conviction applications, he has not demonstrated that any inadequacy in the Davis Correctional Facility's legal assistance program hindered his ability to do any of these things.  Rather, the record reflects that with the aid of counsel, Plaintiff filed a partially successful direct appeal, *see* Case No. CIV-03-1320-M, United States District Court for the Western District of Oklahoma, Report and Recommendation, Doc. No. 31, pp. 1 -2; that he initiated a petition for habeas corpus which was reviewed on the merits by this Court, *id.;* and that he filed applications for post-conviction relief in state court [Doc. No. 117, Exhibits S and Z].  Plaintiff fails to point to any evidence that establishes "for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of

deficiencies in the prison's legal assistance [program], he could not have known.  Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the [legal assistance program] that he was unable to even file a complaint." *Lewis,* 518 U.S. at 351.  Without actual injury, Plaintiff lacks standing to pursue his claim of denial of access to courts.  *Id.* at 349. *See also Marsh v. Newton,* No. 97-2157, 1998 WL 39235, at *2 (10th Cir. Jan. 30, 1998) (unpublished op.) (absence of actual injury is fatal to an equal protection claim based on lack of access to a law library)).  Summary judgment in favor of the Defendants is, once again, recommended.

## Plaintiff's Motion for Judgment on the Pleadings

Pursuant to Fed. R. Civ. P. 12(c), Plaintiff requests judgment on the pleadings in this matter [Doc. No. 105] alleging that Defendants "have failed to fairly respond" to Plaintiff's complaint or "to submit any evidence or proof contradicting" such complaint. *Id.* at 1. In light of the foregoing recommendation that summary judgment be granted in favor of Defendants on three alternative grounds, it is further recommended that Plaintiff's motion for judgment on the pleadings be denied.

## RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

It is the recommendation of the undersigned Magistrate Judge that Defendants Jones, Evans, and Ward's motion for summary judgment [Doc. No. 106] on Plaintiff's individual capacity claims be granted and that Plaintiff's official capacity claims be dismissed without prejudice.  It is further recommended that Plaintiff's motion for judgment on the pleadings [Doc. No. 105], motion to compel [Doc. No. 115], motion for declaratory judgment [Doc.

No. 120], and motion for ruling on the pleadings [Doc. No. 122] be denied.  As to Plaintiff's remaining motions of record, his motions to amend [Doc. Nos. 110 and 117] should be deemed granted, his request that a filing be forwarded to Defendants [Doc. No. 118] should be deemed denied, his motions for an order as to service [Doc. No. 121], for a status report [Doc. No. 123], for appointment of counsel [Doc. No. 125], and for an extension of time [Doc. No. 126] should be denied as moot, and his request for summonses from the court clerk [Doc. No. 124] should be denied as procedurally redundant and moot.

The parties are advised of their right to file an objection to the Report and Recommendation with the Clerk of this Court by the 10th day of September, 2009 in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1.  The parties are further advised that failure to make timely objection to the Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein.  *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the present case.

IT IS SO ORDERED this 21st day of August, 2009.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE